H. PARK PARTNERS, L.L.C., Appellee,

v.

FRICK et al., Appellant.

[Cite as *H. Park Partners, L.L.C. v. Frick*, 181 Ohio App.3d 691, 2009-Ohio-1462.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–08–054.

Decided March 20, 2009.

[black redaction bars]

Diane J. Knoblauch, for appellee.

Martin J. Holmes Jr., for appellant.

PIETRYKOWSKI, Judge.

{¶ 1} Christopher Frick, appellant, appeals the judgment of the Wood County Court of Common Pleas issued on July 7, 2008, after a bench trial. The judgment holds Frick personally liable for intentionally damaging property of appellee, H. Park Partners, L.L.C. ("H. Park"), and awards H. Park damages in the amount of $75,000, interest running from January 15, 2005, and costs.

{¶ 2} Frick is the president of Kizer's Restaurants, Inc. ("Kizer's"). Beginning in 1996, Kizer's leased real property located at 2711 Holiday Lane in Perrysburg, Ohio for use as a restaurant known as Jed's Barbeque and Brew ("Jed's"). H. Park purchased the property in 2003, subject to the lease. In October 2004, Kizer's and H. Park agreed to terminate the lease and that Kizer's would vacate the property.

{¶ 3} Kizer's, Jed's–Perrysburg, Inc., and Frick were named as defendants in the amended complaint. The amended complaint included allegations that the defendants directly or through agents willfully and wantonly damaged the 2711 Holiday Lane property.

{¶ 4} Prior to trial, the trial court awarded appellee judgment against Kizer's for damages in the amount of $97,000. The case proceeded to trial on intentional-destruction-of-property claims against all defendants.

{¶ 5} Appellant asserts two assignments of error on appeal:

{¶ 6} "A. The court below erred as a matter of law in holding that lessee, Christopher Frick is vicariously liable for the actions of independent contractors and intervening actors by virtue of a master/servant relationship.

{¶ 7} "B. The court below's verdict holding defendant Christopher Frick personally liable for the apparent damages to plaintiff's property is against the manifest weight of the evidence."

{¶ 8} The October 2007 lease-termination agreement provided for termination of the lease effective January 7, 2005. Kizer's was obligated to vacate the premises by that date. The agreement also required Kizer's to pay $32,080.08 as past-due rent under a schedule established by the agreement. Additionally, Kizer's or its insurer was obligated to pay for plumbing expenses due to a sewer backup at adjacent premises on October 9, 2004, if it were established that the backup resulted from Kizer's actions. The agreement identified the cause of the backup as a grease buildup.

{¶ 9} Kizer's did not vacate the leased premises on January 7, 2005. It secured additional time to move and vacated the premises, according to appellant, on January 14, 2005. H. Park did not have keys to the property. Its maintenance man attempted to gain entry on January 16, 2005, but found the doors locked. It was necessary for him to remove the entrance door to the restaurant to gain access to the building. H. Park found substantial intentional damage to the property upon entry.

{¶ 10} Charles Plymale, a contractor, testified concerning the condition of the premises after Kizer's left. Plymale found extensive intentional damage to the property caused by the manner in which various fixtures and equipment were removed. He testified to examples of the intentional damage:

{¶ 11} "Q. Okay. In terms of your comments regarding intentionally doing something, would you be referring to pulling that, the hood or that back, the stainless steel back splash off the wall as one example.

{¶ 12} "A. That would be one. Breaking the water lines off at the floor would be another. Tearing the bar up, taking the ceiling grid down, taking the ceiling tile down, tearing the sink off the wall, those are all just things that in a typical move if you're going to move out of a building you typically don't do that. You don't leave a building in that condition no matter what the circumstances are. You just don't, you know that's just not the way you leave things. But, yeah, those things I mentioned definitely would have been to me, looked intentional."

{¶ 13} Plymale also testified to additional intentional damage and to a cost of repair of $75,000.

{¶ 14} Appellant denied that he or Kizer's was responsible for any damage to the property. Appellant testified that as president of Kizer's, he hired an independent contractor to accomplish the move, gave the contractor the keys to the building, and instructed him to deliver the keys to appellee once the move was completed. He testified that he did not supervise the move or inspect the results. Appellant testified that he had not been present on the premises after January 1, 2005. He denied knowledge as to the identity of those who damaged the property.

{¶ 15} The company hired by Frick for the move was closely tied to Frick and to Kizer's. Appellant testified that the business was owned or partially owned by the individual who routinely handled maintenance for Kizer's. This was the same individual who served as Kizer's contact person for H. Park to discuss maintenance issues at the 2711 Holiday Lane property.

{¶ 16} Ronald Schmidt, a managing partner of H. Park, testified at trial of a difficult relationship with Frick during the lease. According to Schmidt, H. Park's contacts with Frick personally were "unpleasant." He described Frick as "uncooperative" and "defiant." According to Schmidt, "[o]ur communication with Mr. Frick was not a friendly communication." Schmidt also testified that H. Park never spoke to anyone other than Frick on business issues, contract issues, or money issues related to the 2711 Holiday Lane property.

{¶ 17} Frick denied that there was bad blood with H. Park and testified that disputes were handled through attorneys. Those disputes, according to Schmidt, included the failure to pay rent on a timely basis and sewer drains being plugged by grease that had been poured into them. H. Park called police to report one incident that occurred on October 9, 2004. Four men were seen pouring grease into an open drain outside at the Holiday Park property. The grease caused a sewer backup to adjoining premises located in the same building as Jed's. Frick denied that Kizer's was responsible for the incident.

## Manifest Weight of the Evidence

{¶ 18} We consider the second assignment of error first. In it, appellant challenges the trial court's judgment on the basis that it is against the manifest weight of the evidence at trial.

{¶ 19} Review of a civil judgment on the basis that it is against the manifest weight of the evidence is governed by the Ohio Supreme Court's decision of *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Under the standard announced in *C.E. Morris Co. v. Foley Constr. Co.*, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Id. at syllabus.

{¶ 20} The civil manifest weight of the evidence standard "affords more deference to the fact-finder" than is afforded in criminal cases. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 26. The civil standard "tends to merge the concepts of weight and sufficiency." Id. In determining whether a civil judgment is against the manifest weight of the evidence, an appellate court does not reweigh the evidence. Id.

{¶ 21} Appellant argues that competent, credible evidence is lacking to conclude that he held personal ill will towards H. Park and that he ordered destruction of the property. He argues that he lacked day-to-day personal involvement in dealings between Kizer's and H. Park and that he was not personally involved in actions to vacate the premises.

{¶ 22} Access to this property during the time when the damage occurred was very limited. H. Park had no keys. The property was left locked after Kizer's vacated. On January 16, 2005, H. Park secured access only by removing the door to the restaurant. In our view, the record contains competent, credible evidence to support the trial court's factual finding that "Christopher Frick and his agents were in sole possession of the keys to the leased premises and had sole occupancy thereof until the middle of January 2005."

{¶ 23} There is also competent, credible evidence to support the conclusion that the damage to the property "was intentionally, willfully and wantonly malicious" while appellant and his agents were in sole possession. The testimony of contractor Charles Plymale provided a detailed analysis of damage to the property and support for his conclusion that the damage was intentional and malicious.

{¶ 24} While appellant disputed the testimony of Roland Schmidt about the existence of a strained personal relationship between appellant and individuals acting for H. Park, in our view, the facts at trial presented an issue for the trier of fact to resolve as to whether Frick bore such ill will to H. Park that it could reasonably be concluded that the intentional and malicious damage was caused by appellant or by others at his direction.

{¶ 25} Given the history of the relationship of Kizer's and H. Park, Frick's control of the premises during the relevant time period, the animosity displayed by Frick towards H. Park, and the opportunity of the trial court to consider and evaluate the credibility of Frick's testimony at trial, we conclude that there was competent, credible evidence supporting the trial court's conclusion that Frick personally ordered the destruction of the property by individuals involved in moving equipment to vacate the premises.

{¶ 26} Lack of direct evidence that Frick personally damaged or directed others to damage the property is not determinative. "Circumstantial and direct evidence inherently possess the same probative value * * *." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at syllabus. Circumstantial evidence can establish the identity of a perpetrator. *State v. Davis,* 6th Dist No. L–00–1143, 2002-Ohio-3046, 2002 WL 1370646, ¶ 63. Specifically, circumstantial evidence can identify the individual who intentionally damaged property. See, e.g. *State v. Kiley,* 8th Dist. Nos. 86726 and 86727, 2006-Ohio-2469, 2006 WL 1360528,

¶ 10; *State v. Hamilton*, 8th Dist. No. 85292, 2005-Ohio-4161, 2005 WL 1926041, ¶ 11.

{¶ 27} We find that appellant's argument that the judgment is against the weight of the evidence is without merit. Assignment of error B is not well taken.

{¶ 28} Under assignment of error A, appellant argues that the evidence does not support vicarious liability for the damage to the premises. The trial court's judgment, however, is not based upon vicarious liability. The trial court imposed liability on appellant based upon a conclusion that "Christopher Frick ordered the destruction of this property." Frick was on a mission of his own: "As the Court previously concluded, these actions were not the actions of the corporation nor Christopher Frick acting as president, but rather on a mission of his own."

{¶ 29} Accordingly, we find that assignment of error A is not well taken.

{¶ 30} On consideration whereof, the court finds that substantial justice has been done the party complaining and that appellant has not been denied a fair trial. The judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.

Judgment affirmed.

HANDWORK and SINGER, JJ., concur.